**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL SKRZECZKOSKI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTELLIGENT SYSTEMS CORPORATION, J. LELAND STRANGE, MATTHEW A. WHITE, A. RUSSEL CHANDLER III, PHILLIP H. MOISE, and PARKER H. PETIT,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Skrzeczkoski ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Intelligent Systems Corporation ("Intelligent Systems" or the

"Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Intelligent Systems securities from January 23, 2019 through May 29, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Intelligent Systems securities during the Class Period and was economically damaged thereby.

7.     Defendant Intelligent Systems purports to primarily engaged in the business of providing technology solutions and processing services to the financial technology and services market. Intelligent Systems is incorporated in Georgia and its principal executive offices are located at 4355 Shackleford Road, Norcross, Georgia 30093. The Company's stock trades on the NYSE American under the ticker symbol "INS."

8.     Defendant J. Leland Strange ("Strange") has served as the Company's President since 1983 and its Chief Executive Officer ("CEO") and Chairman of the Board since 1985.

9.     Defendant Matthew A. White ("White") has served as the Company's Chief Financial Officer and Secretary since January 2019.

10.     Defendant A. Russell Chandler III ("Chandler") has served as a Director of the Company since 2017.

11.     Defendant Phillip H. Moise ("Moise") has served as a Director of the Company since 2013.

12.     Defendant Parker H. Petit ("Petit") has served as a Director of the Company since 1996.  Defendant Parker is a member of Intelligent Systems' Audit Committee and was CEO of the MiMedx Group, Inc ("MiMedx Group") from February 2009 until June 2018.

13.     Defendants Strange, White, Chandler, Moise, and Petit are collectively referred to herein as the "Individual Defendants."

14.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.     Intelligent Systems is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Intelligent Systems under *respondeat superior* and agency principles.

17.     Defendants Intelligent Systems and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements

18.     After the close of the market on January 22, 2019, Intelligent Systems issued a press release with its preliminary financial results for the year ended December 31, 2018 (the "January 22, 2019 Press Release").  A copy of the January 22, 2019 Press Release was attached to a Form 8-K that the Company filed with the SEC on the same day.  That Form 8-K was signed by Defendant Strange.

19.     In the January 22, 2019 Press Release, Defendant Strange commented: "Given the significant growth experienced by Intelligent Systems in 2018 over the 2017 year, I thought it prudent to provide shareholders and interested parties an early preliminary look at the 2018 financial results rather than waiting for our 10-K filing that will not come for a couple of months."

20.     The January 22, 2019 Press Release further stated:

**Total revenues** are estimated to be approximately $20,000,000 for the year representing growth of 115 percent compared to 2017.

**Income (loss) from operations** is expected to be approximately $6,000,000 for the year compared to a loss from operations of $1,403,000 in the prior year.

(emphasis in original).

21.     On March 13, 2019, Intelligent Systems issued a press release announcing its financial results for the three and twelve months ended December 31, 2018 (the "March 13, 2019 Press Release").  A copy of the March 13, 2019 Press Release was attached to a Form 8-K that the Company filed with the SEC on the same day.  That Form 8-K was signed by Defendant White.

22.     The March 13, 2019 Press Release stated:

**Total revenues** of $6,054,000 and $20,100,000 in the three and twelve month periods, respectively, represented growth of 138 percent and 119 percent, respectively, as compared to the same periods in 2017.

**Income (loss) from operations** was $2,268,000 and $6,142,000 for the three and twelve

month periods, respectively, compared to a loss from operations of $704,000 and $1,502,000, respectively, in the comparable prior year periods.

**Net income (loss)** was $2,427,000 and $6,244,000 for the three and twelve month periods, respectively, compared to a net loss of $650,000 in the comparable prior year quarter and net income of $374,000 in the comparable prior year."

(emphasis in original).

23.     On March 13, 2019, Intelligent Systems also filed its annual report on Form 10-K for the year ended December 31, 2018 with the SEC (the "2018 10-K") that confirmed the financial results that the Company announced. The 2018 10-K was signed by Defendants Strange, White, Chandler, Moise, and Petit. The 2018 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Strange and White attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24.     The 2018 10-K further stated that the Company's internal control over financial reporting was effective:

The company's management evaluated the effectiveness of the company's internal control over financial reporting as of December 31, 2018. In making this evaluation, management used the criteria set forth by the Committee of Sponsoring Organizations ("COSO") of the Treadway Commission in *Internal Control – Integrated Framework*. Based on our evaluation management believes that, as of December 31, 2018, the company's internal control over financial reporting is effective based on those criteria.

25.     Regarding related-party transactions, the 2018 10-K only stated:

The lease on our headquarters and primary facility at 4355 Shackleford Road, Norcross, Georgia is held by ISC Properties, LLC, an entity controlled by J. Leland Strange, our Chairman and Chief Executive Officer. Mr. Strange holds a 100% ownership interest in ISC Properties, LLC. We paid ISC Properties, LLC $210,000 in both years ending December 31, 2018 and 2017.

Please refer to the subsection entitled "Proposal 1 - The Election of One Director - Nominee" in the Proxy Statement referred to in Item 10 for information regarding the independence of the company's directors. This information is incorporated into this Item 13 by reference.

26.     On April 12, 2019, Intelligent Systems filed a Proxy Statement for its annual meeting of shareholders to be held May 23, 2019 (the "2019 Proxy Statement").  The 2019 Proxy Statement gave the following description of Defendant Petit's background:

> Parker (Pete) H. Petit has served as a director since 1996. Mr. Petit is the President of The Petit Group, a private investment company. Mr. Petit was previously the CEO of MiMedx Group, Inc., an integrated developer, manufacturer and marketer of bio-material based products. Mr. Petit served as Chairman of the Board and Chief Executive Officer of Matria Healthcare, Inc., a comprehensive disease management services company from 1996 to 2008. The Board considered Mr. Petit's extensive experience as a successful entrepreneur and as an executive and member of the board of directors of several publicly traded technology and healthcare companies, as well as his familiarity with the company since 1996 in determining that he should serve as a director of the company. The Board has determined that Mr. Petit is an independent director under the applicable rules of NYSE American.

27.     The 2019 Proxy Statement also stated that the Board determined that Defendant Petit, who serves on the Company's Audit Committee, was a financial expert:

> All members of the Audit Committee currently meet the applicable independence and qualifications standards of the NYSE American. The Board has determined that Mr. Petit is a financial expert as defined by the rules of the SEC, and is financially sophisticated as defined in the listing standards of NYSE American. The Board based this determination, in part, on Mr. Petit's experience in actively supervising senior financial and accounting personnel and in overseeing the preparation of financial statements as the chief executive officer and chairman of publicly-traded companies.

28.     On April 22, 2019, Intelligent Systems issued a press release announcing its preliminary financial results for the quarter ended March 31, 2019 (the "April 22, 2019 Press Release"). A copy of the April 22, 2019 Press Release was attached to a Form 8-K that the Company filed with the SEC on the same day.  That Form 8-K was signed by Defendant White.

29.     In the April 22, 2019 Press Release, Defendant Strange commented:

> We are pleased to report preliminary first quarter 2019 revenues of about $7 million and preliminary income from operations of $2.5 to $2.7 million. This is significantly higher than the 1st quarter of 2018 for both revenue and operating profit. Professional services continue to make up a large portion of our current revenue as we have more demand for the expertise of our CoreCard team than hours available. We continue to grow and train to be better able to meet the demands of

our customers.

30.     The April 22, 2019 Press Release further stated:

**Total revenues** are expected to be $6,966,000 for the quarter compared to revenue of $4,058,000 in the first quarter of 2018, an increase of 72 percent.

In the following table, revenue is disaggregated by type of revenue for the three months ended March 31, 2019 and 2018:

| **Three months ended March 31**, (*in thousands*) | **2019** | **2018** |
|---|---|---|
| License | $ 800 | $    95 |
| Professional services | 3,964 | 2,109 |
| Processing and maintenance | 1,811 | 1,624 |
| Third party | 391 | 230 |
| Total | $6,966 | $ 4,058 |

**Income from operations** is expected to be between $2,500,000 and $2,700,000 for the quarter compared to income from operations of $821,000 in the first quarter of 2018.

(emphasis in original).

31.     On May 3, 2019, Intelligent Systems issued a press release announcing its financial results for the quarter ended March 31, 2019 (the "May 3, 2019 Press Release"). A copy of the April 22, 2019 Press Release was attached to a Form 8-K that the Company filed with the SEC on the same day.  That Form 8-K was signed by Defendant White.

32.     In the May 3, 2019 Press Release, Defendant Strange commented:

We re-affirm our previously reported preliminary first quarter 2019 revenues of about $7 million (actual $6,966,000) and preliminary income from operations of $2.5 to $2.7 million (actual $2,605,000) representing significant growth from the same period last year and a good increase from the fourth quarter of 2018. This is significantly higher than the first quarter of 2018 for both revenue and operating profit affirming the progress we made during the last year.

33.     The May 3, 2019 Press Release further stated:

**Total revenues** of $6,966,000 in the three month period represented growth of 72 percent compared to the same period in 2018. In the following table, revenue is disaggregated by type of revenue for the three months ended March 31, 2019 and 2018:

| Three months ended March 31, (*in thousands*) | 2019 | 2018 |
|---|---|---|
| License | $ 800 | $ 95 |
| Professional services | 3,964 | 2,109 |
| Processing and maintenance | 1,811 | 1,624 |
| Third party | 391 | 230 |
| Total | $6,966 | $ 4,058 |

**Income from operations** was $2,605,000 for the quarter compared to income from operations of $821,000 in the comparable prior year quarter.

**Net income** was $2,072,000 for the quarter compared to net income of $893,000 in the comparable prior year quarter.

(emphasis in original).

34. On May 3, 2019, Intelligent Systems also filed its quarterly report on Form 10-Q for the quarter ended March 31, 2019 with the SEC (the "1Q 2019 10-Q") that confirmed the financial results that the Company announced. The 1Q 2019 10-Q was signed by Defendants Strange and White and also contained certifications pursuant to SOX signed by those Defendants that attested to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

35. The 1Q 2019 10-Q further stated that the Company's internal control over financial reporting was effective:

> Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the company's disclosure controls and procedures are effective. There were no significant changes in the company's internal control over financial reporting or in other factors identified in connection with this evaluation that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, the company's internal control over financial reporting.

36. The statements contained in ¶¶18-35 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded

by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Petit, the "financial expert" on the Company's Audit Committee, engaged in accounting fraud as the CEO of MiMedx Group; (2) the Company's CEO, Defendant Strange, engaged in undisclosed related-party transactions with Defendant Petit and others and had an undisclosed personal relationship with the Company's auditor; (3) the Company had its employees set up or take control of shell companies in Asia so they could partake in undisclosed related-party transactions for the purpose of either fabricating revenue for the Company and/or siphoning money out of the Company; and (4) as a result, Defendants' statements about Intelligent Systems' business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

37.    On May 23, 2019, after market hours, MiMedx Group filed a Form 8-K with the SEC that stated that an investigation by its audit committee found that Defendant Petit engaged in accounting fraud when he was CEO of MiMedx Group:

*Non-Reliance on Financial Statements*

First, the Investigation revealed accounting irregularities regarding the recognition of revenue under generally accepted accounting principles ("GAAP"). The Audit Committee, with the concurrence of management, concluded that the Company's previously issued consolidated financial statements and financial information relating to each of the fiscal years ended December 31, 2012, 2013, 2014, 2015 and 2016 and each of the interim periods within such years, along with the unaudited condensed consolidated financial statements included in the Company's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2017, June 30, 2017 and September 30, 2017, would need to be restated. The determination of the need to restate was based on the findings as of June 2018 presented to the Audit Committee, which were primarily focused on the accounting treatment afforded to the sales and distribution practices with respect to two distributors. The evidence demonstrated that former members of senior management employed certain implicit arrangements, which resulted in a course of dealing that superseded the explicit terms of the contracts, and that the Company improperly recognized revenue from these two distributors.

*Former Members of Management Disregarded Revenue Recognition Rules under Generally Accepted Accounting Principles*

Second, the Investigation found evidence that demonstrated, among other things, that former members of senior management, including Mr. Petit, the Company's former Chief Operating Officer, William C. Taylor, the Company's former Chief Financial Officer, Michael J. Senken, and the Company's former Controller, John Cranston, were aware of the Company's course of dealing with its largest distributor and that this course of dealing was inconsistent with the explicit terms of the contract. Former members of senior management were also aware that this course of dealing included detailed procedures, established as early as 2012, to determine when the distributor would pay for the Company's products.

*     *     *

*Material Misstatements and Omissions to Several Key Stakeholders and Regulators*

Fourth, the Investigation found that the evidence demonstrated that after questions began to be raised regarding the Company's accounting practices, Messrs. Petit, Taylor, Senken and Cranston made material misstatements and omissions about the Company's course of dealing with its largest distributor, as well as the Company's corresponding revenue recognition practices, to a number of key stakeholders and regulators, including the Division of Corporation Finance of the U.S. Securities and Exchange Commission (the "SEC"), the Board, the Audit Committee and the Company's outside auditors. These included:

- … Messrs. Petit, Taylor, Senken and Cranston did not disclose to the Audit Committee or the Company's outside auditors that the Company routinely issued credits to the distributor for lost, damaged or missing tissues, nor did they disclose that the distributor only paid the Company for a tissue after it had sold that tissue to its customer.

- On multiple occasions, Messrs. Petit, Senken and Cranston signed letters to the Company's outside auditors misrepresenting that the Company had no side deals or other arrangements that had not been disclosed to the outside auditors.

- In November 2016, after two former employees alleged that the Company had engaged in channel stuffing and improper revenue recognition practices, Messrs. Petit and Senken signed a letter to the Company's outside auditors misrepresenting that they had no knowledge of any allegations of fraud affecting the Company made by current or former employees.

- In early 2017, after the Audit Committee had retained counsel to investigate the allegations made by these former employees, Mr. Petit

11

forwarded to the Board a set of written responses in which counsel for the Company's largest distributor explicitly stated that it only paid the Company for tissues after receiving payment from the distributor's customer. Mr. Petit misled the Board about the accuracy of the information provided by the distributor's counsel.

- Also in early 2017, the Company retained an outside expert to opine on the appropriateness of the Company's recognition of revenue from sales to its largest distributor. Messrs. Petit, Senken and Cranston made misrepresentations to the expert concerning the actual course of dealing between the Company and its largest distributor.

- In early 2017, in letters signed by Mr. Senken, the Company responded to comment letters received from the SEC's Division of Corporation Finance by misrepresenting that the Company's largest distributor was obligated to pay the Company, regardless of whether the distributor resold the product. As noted above, the Company routinely issued credits to the distributor for lost, damaged and missing tissues and received payments from the distributor based on the tissues purchased by the distributor's customer.

- In early 2018, the Company's former senior management prepared a misleading memorandum to the Company's outside auditors that misrepresented key facts regarding the Company's historical relationship with its largest distributor, which were relevant to determining the appropriate revenue recognition under GAAP.

- During a deposition, Mr. Petit falsely testified under oath that it was not true that the Company's largest distributor only paid the Company after the distributor had received a purchase order from its customer.

38. Defendant Petit's gross misconduct included overseeing an internal investigation

that was conducted for the purpose of discrediting whistleblowers:

*Actions Taken Against Whistleblowers*

Further, the Investigation determined that the evidence demonstrated that Messrs. Petit and Taylor engaged in a pattern of taking action against employees who raised concerns about the Company's practices, without conducting a thorough investigation of those concerns. Instead, Messrs. Petit and Taylor focused on disputing the employees' allegations and on seeking to discredit or find wrongdoing by the persons raising the concerns that would justify re-assignment, discipline or termination. For example, after certain employees made allegations of improper accounting practices in late 2016, Mr. Petit directed and oversaw an internal investigation dubbed "Project Snow White" that focused on potential wrongdoing by these employees, rather than the merits of their allegations. As part of Project

Snow White, the secret video surveillance system referenced above was installed at Mr. Petit's direction to record interviews that he, Mr. Taylor and other former members of management conducted of certain employees and those employee's discussions amongst themselves without those employees' knowledge or consent. The evidence showed that Mr. Petit directed that certain employees, whom he and other former members of senior management perceived to hold loyalty to an employee who had raised concerns about the Company's practices, be terminated.

39.     The MiMedx Group further stated that Defendant Petit's behavior was so egregious that the possibility he would be elected to its board of directors made it difficult for it to engage an independent auditor:

> The Company's auditor, Ernst & Young LLP, resigned from the engagement to audit the Company's consolidated financial statements for the year ended December 31, 2017 citing a number of factors, some of which were related to the findings of the Investigation.

> The Company is working diligently to retain an independent auditor and regain compliance with the Company's reporting obligations under applicable securities laws. The Audit Committee and management have interviewed firms as part of the selection process and have been told that either they could not complete their acceptance process until it was known whether Mr. Petit were to be elected to the Board, or if they did complete the acceptance process, they would have to reassess their decision to continue with the engagement. Therefore, the Company believes that if Mr. Petit were to be elected to the Board or if Mr. Petit were to be re-hired in any management capacity, there would be a very high risk that the Company could not engage a new auditor or any previously engaged auditor would resign.

40.     On May 24, 2019, before market hours, Aurelius Value published a report entitled "INS: A Wolf in Pete's Clothing." The report discussed MiMedx Group's disclosures concerning Defendant Petit and also accused the Company's CEO, Defendant Strange, *inter alia,* of having engaged in undisclosed related-party transactions with Defendant Petit and others and of having an undisclosed personal relationship with INS's auditor, Nicolas Cauley.

41.     On this news, shares of Intelligent Systems fell $4.18 per share, or more than 10%, to close at $34.93 per share on May 24, 2019, damaging investors.

42.     On May 30, 2019, before the market opened, Grizzly Research LLC issued a report entitled "Intelligent Systems Corp: Material Undisclosed Related Party Transactions Cast Doubt

on the Integrity of Financial Statements."  The report presented evidence that "Intelligent Systems

Corp. (INS) has its employees set up or take control of undisclosed shell companies in Asia, who

then partake in undisclosed related party transactions with INS intended to either **round-trip**

**revenue back to INS or siphon money out of the company.**" (emphasis in original).  It further

stated that "there is a possibility that all revenue growth since January 2018 has been a result of

undisclosed round-trip transactions with Indian related parties."

43.     On this news, shares of Intelligent Systems fell $6.82 from the prior day's closing

price of $33.81 or over 20%, to close at $26.99 per share on May 30, 2019, further damaging

investors.

44.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline

in the market value of the Company's common shares, Plaintiff and other Class members have

suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants

who acquired Intelligent Systems securities publicly traded on the NYSE American during the

Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of Intelligent Systems, members of the Individual

Defendants' immediate families and their legal representatives, heirs, successors or assigns and

any entity in which Officer or Director Defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, Intelligent Systems securities were actively traded

on the NYSE American. While the exact number of Class members is unknown to Plaintiff at this

time and can be ascertained only through appropriate discovery, Plaintiff believes that there are

hundreds, if not thousands of members in the proposed Class.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by defendants' wrongful conduct in violation of

federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class

and has retained counsel competent and experienced in class and securities litigation. Plaintiff has

no interests antagonistic to or in conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class
  Period misrepresented material facts about the financial condition and business of
  Intelligent Systems;

- whether Defendants' public statements to the investing public during the Class
  Period omitted material facts necessary to make the statements made, in light of
  the circumstances under which they were made, not misleading;

- whether the Defendants caused Intelligent Systems to issue false and misleading
  SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Intelligent Systems' securities during the Class Period were
  artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

51.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Intelligent Systems shares met the requirements for listing, and were listed and actively traded on the NYSE American, a highly efficient and automated market;

- As a public issuer, Intelligent Systems filed periodic public reports with the SEC;

- Intelligent Systems regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Intelligent Systems was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

52.     Based on the foregoing, the market for Intelligent Systems securities promptly digested current information regarding Intelligent Systems from all publicly available sources and

reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Intelligent Systems securities during the Class Period.

58. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Intelligent Systems were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Intelligent Systems, their control over, and/or receipt and/or modification of Intelligent Systems' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Intelligent Systems, participated in the fraudulent scheme alleged herein.

59. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Intelligent Systems personnel to members of the investing public, including Plaintiff and the Class.

60. As a result of the foregoing, the market price of Intelligent Systems securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Intelligent Systems securities during the Class Period in purchasing

Intelligent Systems securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

61.     Had Plaintiff and the other members of the Class been aware that the market price of Intelligent Systems securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Intelligent Systems securities at the artificially inflated prices that they did, or at all.

62.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

63.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Intelligent Systems securities during the Class Period.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     During the Class Period, the Individual Defendants participated in the operation and management of Intelligent Systems, and conducted and participated, directly and indirectly, in the conduct of Intelligent Systems' business affairs. Because of their senior positions, they knew the adverse non-public information about Intelligent Systems' misstatement of revenue and profit and false financial statements.

66.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Intelligent Systems' financial condition and results of operations, and to correct promptly any public statements issued by Intelligent Systems which had become materially false or misleading.

67.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Intelligent Systems disseminated in the marketplace during the Class Period concerning Intelligent Systems' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Intelligent Systems to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Intelligent Systems within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Intelligent Systems securities.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Intelligent Systems.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)      awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 9, 2019                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email:  pkim@rosenlegal.com
             lrosen@rosenlegal.com

*Counsel for Plaintiff*